KARP & WEISS, P.C.
3060 North Swan Road
Tucson, AZ 85712-1225
Tel: (520) 325-4200
Fax: (520) 325-4224

Steven M. Weiss, State Bar No. 002261
PCC No. 61412
sweiss@karpweiss.com

J. David Franklin, Cal. State Bar No. 041659
550 West C Street, Suite 950
San Diego, CA 92101
Tel: (619) 239-6300
Fax: (619) 239-6369
jdfranklaw@san.rr.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| J. DAVID FRANKLIN, et al.,<br>Plaintiffs,<br>v.<br>STATE OF ARIZONA, et al.,<br>Defendants. | Case No. CV 10-272-TUC-RCC (CRB)<br><br>**DECLARATION OF J. DAVID FRANKLIN IN OPPOSITION TO STATE DEFENDANTS' MOTION FOR A STAY** |

I, J. David Franklin, declare as follows:

1. I am one of the attorneys for Plaintiffs in the above-entitled action.

2. Attached hereto as Exhibit A and incorporated herein by reference is a copy of the Order issued on July 13, 2010, by the Honorable John S. Leonardo, Judge of the Pima County Superior Court, with respect to the Motion to Suppress filed by J. David Franklin Sr. and John David Franklin Jr.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 6, 2010, at San Diego, California.

*s/J. David Franklin*
J. David Franklin

# EXHIBIT A

FILED
[illegible] NOLAND

JUL 1 3 2010

10 JUL 13 PM 2:32

ARIZONA SUPERIOR COURT, PIMA COUNTY

JUDGE: HON. JOHN S. LEONARDO BY: R. ST. GERMAINE, DEPUTY CASE NO. CR 20094710-001
CR 20094710-002

COURT REPORTER: NONE DATE: July 13, 2010

STATE OF ARIZONA

VS.

J. DAVID FRANKLIN SR. (001) &
JOHN DAVID FRANKLIN JR. (002)

---

**ORDER**

---

The court has read and considered the Motion to Suppress filed by J. David Franklin Sr. ("Dave Franklin") March 9, 2010, in which John David Franklin Jr. ("John Franklin") joins, the state's response, and all other records and documents related to the motion. The court held hearings on this motion on April 30, May 10, May 24, and June 28 at which the parties presented evidence and oral argument. Thereafter, the parties submitted memoranda, which the court has read and considered. The court grants the motion in part.

FACTUAL HISTORY

Defendants Dave and John Franklin are charged with racketeering, money laundering, two counts of forgery, and eleven counts of fraudulent schemes and artifices relating to their ownership and management of the now-defunct Hurricane Motors, a Tucson used-car dealership in operation between 2005 and 2008. The same charges are the subject of a civil suit (*State v. Franklin*, C20085200) filed by the Consumer Fraud and Protection Division (CFPD) of the Attorney General, now inactive pending the outcome of this case. There is a related civil forfeiture action (*In re 43 Automobiles*, C20090290), currently unassigned but previously before Judge Miller, who has ruled that this criminal matter takes precedence.

In December 2008, prompted by a series of consumer complaints about deceptive sales practices, the CFPD initiated an investigation into Hurricane's operations. For purposes of initiating a separate criminal investigation, the CFPD passed along the names and contact information of those consumer-complainants to Special Agent Rick Valencia of the AG's investigations section, whose affidavit was the basis for the search warrant at the center of this motion. Valencia has testified that the CFPD also provided him with three civil complaints from consumers: those of Andrew Camelot, Christian Porter, and Rhonda and Matt VerHalen.

According to Valencia, Hurricane was not authorized to conduct business in Arizona because its affiliated lending institution, Riteway Financial, had never had the proper licenses from the Arizona Department of Financial Institutions (DFI). It appears that Valencia did not specifically search DFI for Hurricane's license.

Exhibit A

(Dave Franklin claims that Hurricane was duly licensed by the Motor Vehicle Division, although it had not paid the fee on time to renew that license, and that Hurricane applied for DFI licensure but DFI did not accept the application for some technical reason.)[1] Valencia stated in the affidavit his belief that Riteway was a fictional institution created by Franklin[2] to cover the fact that money received from those who financed vehicles purchased at Hurricane actually went to Franklin's personal bank account.

Valencia interviewed one complaining consumer, Sandra Urias, who alleged that she purchased a car from Hurricane that began to have mechanical problems, then traded it in for another car, without Hurricane ever providing documentation of the second purchase or proof as to what account her payments were being deposited into. Franklin told Urias that Riteway was the only bank that would lend to her because of her poor credit history. In November 2008, Urias received a Notice of Repossession from "IGS Nevada." She also received a call from Cherish Lomeli, Franklin's daughter, explaining that the vehicle purchase actually made Urias a "third party," that Franklin had committed "a fraud against her," and that Franklin had stopped making payments to the vehicle's actual lender, Mission Federal Credit Union. Steven Colla at Hurricane confirmed this to Urias. Sometime after the vehicle was repossessed, Franklin called Urias reminding her to make her monthly payment. When Urias told Franklin the vehicle had been repossessed, he hung up. He called back within minutes to say that he had sold Urias his daughter's car and offered to make it right by selling her another car, but she declined.

Valencia stated that, after the interview with Urias, he drove by Hurricane and saw that it appeared to be abandoned, with cars covered in dust and having flat tires, and one car up on blocks.

On the basis of Valencia's affidavit, Judge Bernini issued a search warrant targeting "business records" on the Hurricane premises ("3100 N Oracle Rd."), indicating that business records meant "business licenses to [sic] included but not limited to Arizona Department of Revenue business tax privilege license, Arizona Department of Financial Institution [sic] license to conduct business in the state of Arizona, purchase contracts, loan applications, buyer payment records, applications for title and registration, vehicle inventory records, vehicle titles, temporary registration permits," further specifying that such may be stored in hard files or computer files. The warrant left unchecked the "in the vehicle(s) described as ______" box.

Valencia and twelve or more law-enforcement officers, including five members of the auto theft task force, arrived at Hurricane of December 18, 2008, and seized (1) all business records and personal records of the Franklins and Ladonna Lomeli, (2) forty-three vehicles, (3) twelve motorcycles, (4) eleven pallets of bicycles, (5) six pallets of bicycle parts, and (6) four bicycle frames. The state explains that, "[b]ecause the business was in utter chaos with no organization or filing system, it took the officers more than eight hours to gather the business records."[3] According to the defendants, Valencia, upon arrival, assigned the auto theft task force to check the VINs of all cars on the lot.[4] This search of the VINs revealed that one motorcycle and one dune-

---

[1] In his reply brief, Dave Franklin asserts that Hurricane did submit an application for licensure, but DFI did not process it, either because it didn't receive the application or because the application did not attach necessary supporting documents.

[2] Throughout Valencia's affidavit, there are references to "John Franklin," but it is unclear whether this means Dave (whose first name is John), John, or both. The court uses the name "Franklin," without specifying which defendant, where it is unclear from the record which Franklin was referred to.

[3] The defendants assert that it took a much shorter time to gather the records, and that this eight-hour period includes waiting to make sure every last vehicle on the lot was towed.

[4] Sergeant Berson of the auto theft task force stated in his deposition that "state law allows us to do a business inspection at a facility such as this. Under state law, we don't need a search warrant." Berson Deposition, Ex. M to Motion to Suppress, at 28:9–11. Neither Berson nor the state have specified which state law grants this authority, but the court notes that section 28-4403 of the Arizona Transportation Code pertains to licensing of vehicle dealers:

buggy engine were stolen. Valencia telephonically obtained a search-warrant addendum from Judge Browning naming that motorcycle and engine.

After the seizure, Valencia presented Judge Browning with a Return of Search Warrant listing the above items with particularity. He also presented another affidavit, this one in support of a seizure warrant. In it he restated the basis for the initial search warrant, adding that, upon searching the premises, he had discovered that many vehicles had missing parts, and that based on training and experience he believed that the lot was being used for dismantling vehicles to construct other vehicles, and that frequently in such situations the vehicles or parts being used are stolen. Judge Browning issued the seizure warrant, covering the items that had already been seized.

GROUNDS FOR THE MOTION

The defendants argue that (a) the initial search warrant was unsupported by probable cause; (b) the affidavit on which the warrant was based contained several false statements; (c) the search and seizure of the vehicles, parts, and bicycles on the lot exceeded the scope of the warrant; (d) the seizure warrant was defective because it failed to state the location to be searched and items to be seized with specificity; and (e) the seizure warrant was unsupported by probable cause. The court declines to consider the validity of the seizure warrant and whether the items were properly seized for forfeiture purposes, as that issue is best decided in the civil forfeiture action and is not necessary to the issues at hand in this case.

The central question is whether the items the state seized, including all business records plus vehicles and parts from various vehicles, were properly seized under the search warrant or a warrant exception. This inquiry has three parts: (a) whether the search warrant was valid; (b) if it was valid, whether the items seized exceeded its scope; and (c) if they exceeded the scope of the warrant, whether they fall into the plain-view exception to the warrant requirement.

*I. The validity of the search warrant*

The defendants raise three concerns about the search warrant's validity: its basis in probable cause, its basis upon false statements in the affidavit, and its particularity.

Under the Fourth Amendment to the Federal Constitution and Arizona Criminal Code § 13-3913, "[n]o search warrant shall be issued except on probable cause, supported by affidavit." The Supreme Court held in *Franks v. Delaware* that there is a "presumption of validity" as to the affidavit and that the burden is on the challenging defendant to show the affidavit lacked probable cause. 438 U.S. 154, 171–72 (1978). The defendants' burden is to make a prima facie case challenging the warrant's validity, at which point the burden shifts to the state to prove the lawfulness of its acquired evidence by a preponderance of the evidence. Ariz. R. Crim. P. 16.2(b). Under *State v. Vaughn*, "[p]robable cause is something less than proof needed to convict and

---

> D. Each record required by this section *and all inventories* relating to the records of a licensee shall be available at all times *for physical inspection by agents of the department or members of the highway patrol division. The agents or members may enter on premises where the records or inventories are located during normal business hours for purposes of the inspection. The licensee or any designated employee or agent may accompany any person making the inspection while the person is on the licensee's premises.*

*Id.* (emphasis added). The state does not pursue the argument that Berson and the auto theft task force was searching the VINs under the purview of this or any statute as opposed to the search warrant.

something more than a raw unsupported suspicion. It is a suspicion or belief of guilt that is 'well-grounded.'" 12 Ariz. App. 442, 444, 471 P.2d 744, 746 (1970). The court undertakes a "totality-of-the-circumstances approach" in evaluating whether probable cause was present. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The three areas of probable cause the state points to are (1) the consumer complaints Valencia learned of through the CFPD, (2) the interview with Urias, and (3) the license search. In the affidavit Valencia also mentions (4) driving by the business and seeing that it appeared abandoned with automobiles unclean and in disrepair. The defendants argue that the license search only pertained to Riteway, that Valencia was "not allowed" to use the complaints he got through the CFPD and that they did not provide probable cause of a pattern of fraud, and that the interview should have been limited to providing probable cause as to what happened to Urias only, not other consumers.

There is no legal support for the argument that the consumer complaints cannot in and of themselves establish a basis for probable cause. The written motion and response appear to arise from the assumption that Valencia's knowledge of the consumer complaints was limited to a list of names and contact information CFPD shared with him. This information, by itself, would not provide enough evidence of the substance of specific crimes to establish probable cause. But at the hearings on this motion, Valencia testified that CFPD also provided the civil complaints of three consumers, that he reviewed these complaints, and that they were substantially consistent with each other and with what he learned through his interview with Urias. Though Valencia testified to factual differences between each of the complaints and between the complaints and the Urias case, the court finds that each of the key assertions of irregularities in auto-sale or financing transactions with Hurricane Motors has a basis in multiple consumer accounts. Dave Franklin cites *State v. Harris*, 131 Ariz. 488, 642 P.2d 485 (Ariz. Ct. App. 1982), for the proposition that Valencia could not have relied on the complaints without conducting an independent investigation. But the court in *Harris* held that independent investigation is a sufficient, but not necessary, condition for establishing the reliability of information gathered from informants. *Id.* at 490, 642 P.2d at 487. The court finds no reason to doubt the reliability of the consumer complaints on which Valencia based his investigation. The consumer complaints and the Urias interview, taken together, establish probable cause for a pattern of fraudulent business practices and thus support the warrant as written.

The defendants also claim that Valencia included false statements in the affidavit (references to multiple "unwitting buyers," references to Riteway extending credit, and "Hurricane Motors was not authorized to conduct business"). The defendants cite *State v. Poland* for the standard courts must use in determining whether to void a warrant due to false statements:

> If the defendant is able to make a substantial preliminary showing that the false statement was made knowingly and intentionally, or with reckless disregard for the truth and that the false statement is necessary to a finding of probable cause, the defendant is entitled to a hearing. If at the hearing defendant proves perjury or reckless disregard by a preponderance of the evidence, the false statement is excised from the affidavit. The affidavit's remaining content must be sufficient to establish probable cause, or the search warrant is voided and evidence seized pursuant to it excluded.

132 Ariz. 269, 279, 645 P.2d 784, 794 (Ariz. 1982) (citing *United States v. Young Buffalo*, 591 F.2d 506 (9th Cir. 1979)).

The defendants have failed to make a "substantial preliminary showing" of these statements' reckless falsehood and necessity to the probable-cause finding. The references to "unwitting buyers" and to Riteway extending credit have bases in the sources Valencia used and, though perhaps imprecise and ambiguous, have at

least one meaning that is literally true. The statement "Hurricane Motors was not authorized to conduct business in the State of Arizona" may not have been actually based on Valencia's knowledge of any DFI license search of Hurricane, much less a comprehensive search of other licensing agencies such as MVD. But in light of Urias interview and the consumer complaints, that misleading statement was not necessary to the finding of probable cause and cannot, itself, invalidate the warrant.

A warrant "must describe with particularity the places and things to be searched." *State ex rel. Flournoy v. Wren*, 108 Ariz. 356, 365, 498 P.2d 444, 453 (Ariz. 1972); *accord United States v. Grubbs*, 547 U.S. 90, 97 (2006). On its face, this warrant does just that. But John Franklin, relying on *United States v. Kow*, 58 F.3d 423 (9th Cir. 1995), urges that the warrant was overbroad because it reached all of Hurricane's business records without specifically citing an offense to which they were relevant. John also argues that the affidavit, which does more specifically outline the offense, was not incorporated into the warrant. But the court finds that the affidavit here, unlike that in *Kow*, contains probable cause for fraud that reaches the entire business operation and is therefore not overbroad on its face. *See* 58 F.3d at 427.

Even if the warrant were overbroad, section 13-3925(C) of the Arizona Criminal Code prevents this court from suppressing evidence seized "as a result of a good faith mistake or technical violation." Though the *Kow* court held that a facially overbroad warrant could not be relied on in good faith, Arizona has not adopted this holding, and other jurisdictions have expressly rejected it. *See, e.g., United States v. Najarian*, 915 F. Supp. 1441, 1459 (D. Minn. 1995). Absent controlling precedent to the contrary, the statutory good-faith exception applies in situations such as these.

### *II. Exceeding the scope of the search warrant*

"[T]he scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

The search warrant here was limited in location to the person of "John David 'Jay' Franklin d.b.a. Hurricane Motors" and the premises of "3100 N. Oracle," not to any vehicles. The objects to be found were

> business records, i.e. business licenses to [sic] included but not limited to Arizona Department of Revenue business tax privilege license, Arizona Department of Financial Institution [sic] license to conduct business in the state of Arizona, purchase contracts, loan applications, buyer payment records, applications for title and registration, vehicle inventory records, vehicle titles, temporary registration permits which may be stored as hard files or as computer files or other types of magnetic recording devices

The most natural reading of this admittedly complex list is that the warrant defines "business records" by reference to the eight-item list that follows it. Nowhere does the list include a reference to "things" other than business records, much less identifying vehicles or vehicle parts. All seized items but business records were therefore outside the facial scope of the search warrant.

### *III. Plain-view exception*

The state argues that the seizure of the vehicles and parts was proper because the officers were present on the premises to validly execute a warrant and the vehicles and parts were in plain view. "As long as the warrant authorize[s] them to be where they [are], the police [may] seize any items that [are] in plain view, the evidentiary value of which [is] immediately apparent." *State v. Apelt*, 176 Ariz. 349, 362, 861 P.2d 634, 647

(Ariz. 1993). The question is whether the vehicles and their VINs were in plain view of the officers conducting a search of Hurricane's business records.

This case is comparable to *Arizona v. Hicks*, 480 U.S. 321 (1987). In *Hicks*, officers responded to a call that a man had been injured by a bullet fired from a gun in one apartment through the floor into the apartment below. *Id.* at 323. Responding to the apartment from which the bullet originated, officers entered without a warrant, but lawfully under exigent circumstances, to search for the shooter, other victims, or weapons. *Id.* In addition to finding the weapons, one officer noticed stereo equipment that he thought looked out of place because of its quality. *Id.* He moved the equipment to find a serial number, called it in, and discovered that the equipment had been stolen, at which point he seized it. *Id.* This resulted in the apartment's resident being indicted in the robbery during which the equipment had been stolen. *Id.* at 323–24. The Supreme Court held that jotting down the serial number did not itself constitute a "seizure," but that moving the equipment was a "search"

> separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of his entry into the apartment. Merely inspecting those parts of the turntable that came into view during the latter search would not have constituted an independent search, because it would have produced no additional invasion of respondent's privacy interest. But taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstance that validated the entry.

*Id.* at 324–25. The Court went on to hold that the search was unreasonable because it was unsupported by probable cause at the time and location where the officer was lawfully present. *See id.* at 326–27.

The VINs of the vehicles were not in "plain view" of the law-enforcement officers when they were searching for the business records. No officer would expect to find business records in the windshields of vehicles on the lot; they would expect to find them in the dealership's office, where the actual business records were seized. The evidentiary value, as it relates to the fraud outlined in the warrant affidavit, of the vehicles and their VINs was not "immediately apparent"; only upon running the VINs through a database would an officer discover which, if any, among them were stolen. Accordingly, the search and seizure of the vehicles does not fall within the plain-view exception to the warrant requirement.

The state finally argues that none of the seized evidence should be suppressed because no officer acted in bad faith. Section 13-3925's good-faith exception applies where an officer is attempting to conduct a search pursuant to a warrant but makes a good-faith mistake about the validity of the warrant. *See, e.g., United States v. Leon*, 468 U.S. 897 (1984). It is not applicable where the officers exceeded the scope of a valid warrant.

That the allegedly stolen motorcycle and engine were the targets of the search-warrant addendum is of no moment. That addendum was the product of an illegal search, so the items it specifically named must be suppressed alongside the other items beyond the scope of the initial warrant. *See Alderman v. United States*, 394 U.S. 165, 177 (1969).

In light of the foregoing, the court finds by a preponderance of the evidence that only the business records seized by means of the search warrant were lawfully acquired under the terms of the warrant. It is therefore

ORDERED that the Motion to Suppress is GRANTED with respect to the seized vehicles, motorcycles, bicycles, bicycle parts, bicycle frames, and any seized documents that do not constitute business records and DENIED with respect to all business records.

Dated this 13 day of July, 2010.

HON. JOHN S. LEONARDO

Cc: Hon. John S. Leonardo
Mike Jette, Esq. – Attorney General's Office
Michael L. Piccarreta, Esq.
Michael L. Brown, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of August, 2010, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Paul Correa
Assistant Attorney General
Attorney General's Office
177 North Church Avenue, Suite 1105
Tucson, AZ 85701-1105
Paul.Correa@azag.gov

Andrew Peterson
Humphrey & Peterson, P.C.
3861 East Third Street
Tucson, AZ 85716
Andrew.Petersen@azbar.org

*s/sbs*